I'm going to call this afternoon's docket. The first case is 516-0388, People v. Pamela Muffick. Are you ready to proceed? Your Honors, I'm Assistant Defender Levi Harris, and I'm here today for my client, the appellate Pamela Muffick. May it please the Court. The State, in this case, failed to prove beyond a reasonable doubt that any of the purported churches within 1,000 feet of Pamela Muffick's house operated as a place of worship on the date of her offense. Accordingly, her conviction for aggravated participation in meth manufacturing should be reduced to simple participation, and this Court should remand for resentencing on that lesser conviction. The first point is that this Court's opinion in People v. Fickus is the relevant and controlling authority in this case. It's one that the Illinois Supreme Court has mentioned, distinguished, and I would say tacitly approved by not overruling twice. And I'm also conscious of the fact that two out of three of the people who sat on that case are with us today. But we didn't agree. Well, I know that. I'm also conscious of that, Your Honor. And I want to speak to your dissent. Well, within 1,000 feet of an abandoned church, is that what the statute says? A non-abandoned church. Your Honor, it does not say. It just says a church. It actually doesn't say a church. It says within a family. A place of worship, yeah, I know. Right. I can jump specifically to that. That's the question in the case, isn't it? Your Honor, I don't think that it is. Okay. Well, argue your point then. Okay. So jumping to that, speaking of People v. Newton, that's the Illinois Supreme Court's case that recently construed that portion of the Illinois Controlled Substances Act that would seem to be similar to this portion of the Illinois Methamphetamine Act. And I think maybe I'm extrapolating for me, but it wouldn't have been reasonable to me before People v. Newton to think, well, this portion of the Controlled Substances Act and the Methamphetamine Act mean the same thing. But the way that the court parsed the language in People v. Newton makes a significant difference because in the Controlled Substances Act, you have language that speaks of an enhancement for being within 1,000 feet of the real property comprising any church, synagogue, or other building structure or place used primarily for religious worship. The Illinois Supreme Court found that that used primarily for religious worship only applied in the last instance that church and synagogue were ones that the General Assembly had already said for the purposes of this statute, these are presumptively places of worship. In the Methamphetamine Act, the language is not the same. It speaks of being within 1,000 feet of a place of worship or a parsonage. So there are not these nouns that the General Assembly has placed in there. And whether or not that's – whether Newton was correctly decided, we have to assume that it was. I understand that's the position this court is in and obviously the position everyone in the state of Illinois is in because cert's been denied. But be that as it may, the General Assembly, if it intended the meaning that Newton gave it, church, synagogue, or this other stuff that's within 1,000 feet of a place primarily for religious worship, in this case, they left out those other two parts and we just have specifically a place within 1,000 feet of a place of worship. And I think that that is a critical distinction because in this place we didn't have any proof that the places that were discussed, briefly discussed, were places of worship. The Newton court looked at people versus ficus and it distinguished that case and it said that there was no temporal proof that what happened – that those churches were churches at the time of the offense in that case. It focused on the time element. As this court is no doubt aware, ficus contains both a time element and a use element. It has to be used primarily for religious worship and it has to be used as such at the time of the offense. We don't have testimony as to either of those things here. And Justice Welch, specifically to your dissent in the ficus case, one of the things that you noted that was present there was that the defense at one point conceded that the delivery in that case took place within 1,000 feet of church or place of worship. I'm not sure what they used and I think they would have been presumed to be synonymous before Newton. That was a concession that's certainly not present in this case. And I would say that even under the majority holding in ficus, we have fewer facts here that would say that this was being used as a place of religious worship on the date of the offense. Well, I mean, the Supreme Court looked at our Fifth District opinion and it cited what was quoted that is the temporal relationship and then just said, well, those facts are not present here. It could have discarded the notion that the Fifth District made in its majority opinion, right? Certainly. I think that the Supreme Court could have said we don't find the facts of ficus are distinguishable from the facts in this case. However, to what extent ficus stands for the proposition contrary to what we find today, it is overruled. They do stuff like that all the time, as this Court is no doubt aware. They had two opportunities to do that. They addressed ficus also in People v. Hardman. Not the case before us today, but there seemed to be a conflict between the way that they interpreted the statues in Hardman and in the Newton case. That's not before us today and that's not really relevant to what we have to decide today. Specifics. Going back to Newton, as I think Your Honor just alluded to, what they were construing was the use requirement in the Controlled Substances Act. But laying aside the fact that it's a different statute, they didn't do anything to diminish the temporal requirement, which, you know, even under Newton and under the Controlled Substances Act, the State still has to put on some evidence that this thing was either a church or a synagogue or other place used primarily for religious worship on the date of the offense. Well, if you look at Newton, it is a minimal evidentiary standard of what they have to put on. They just have to ask someone familiar with the structure what goes on there and if they know, you know, with a foundation about their awareness of how they know. And it was, I think it wasn't just a police officer in Newton that testified that. Yes, but as we know, Your Honor, you're correct, and I think that in the language they use, they intend for this to be a very simple burden. But in the things that they cite for the factors that said the State jumped over this hurdle, they list eight of them. Now, I don't know whether eight are, they're not elements, certainly, and I don't know, maybe five would have been enough. But in our reply brief, I think at pages 14, excuse me, 12 to 14, we, you know, talk about those eight different things. You know, there was signage that had the Disciples of Christ Christian Church logo on it. The yard was mowed. There was a lamp lit on the porch. People were coming and going when the guy was there to take the measurements. And four other things that I don't quite remember right now. In this case, you don't have any of those things except the one that we will concede that was the same here was that this guy did use the language, oh, it was the evangelical free church. He used the word church. Well, the State could simply call a church member. The State could call any number of people, you know. That would be a simple way to do it. Right. You wouldn't take the… Or, as in Newton, if the police officer was here. Yes. With the name on it. You know, and I think there was testimony in Newton that this person was familiar not only with town or with his jurisdiction generally, but with this specific area and the goings on of this specific religious body. We don't have any of that here. And, you know, as this… I don't know where all of you live, but I come from Clay County. It's a very small town. And there are churches all over that are no longer in existence. There's fewer of them in town than there are out in the countryside, old country churches and so forth. But I also know that for people who live there, a lot of them, even if they did not go to church there, even if they were heathen who had never been to church a day in their life, would be able to say, oh, yeah, I see cars going in and out of there every Sunday. It's a very simple burden that the state somehow still failed to meet in this case. All right. We'll have a few moments for rebuttal after the state's assessment. Good afternoon, Your Honors. Counsel, may it please the court. My name is Valerie Osment, and I represent the appellant in this matter, the people of the state of Illinois. Your Honors, what we must remember at the start is that this case must be viewed with all presumptions in line with the jury's verdict. We had a jury in this case presumed to be competent, presumed competent trial judge that oversaw everything that happened at the trial. It's the jury's job to weigh the evidence and its credibility. The jury was also given instructions, and they are presumed to have followed those instructions. And given all of that, the jury's verdict is entitled to deference in this case. But the state still has to meet its burden of approving each and every element of those instructions. Yes, Your Honor. And, in fact, if you look at the language of the statute in this case, it says, A person engages in aggravated participation in the manufacture of methamphetamine when the person knowingly participates in the manufacture of methamphetamine with the intent that the methamphetamine or substance containing it be produced, and the methamphetamine manufacturing occurs within 1,000 feet of a place of worship or parsonage. Looking at the plain language of the rule, like Newton did, although it's a different statute, the same principles can be applied in this case. There is no requirement that the state has to put on particular facts and proof that the church is an actual functioning church on the day in question. Is this a place of worship? I'm sorry. Is this a place of worship? Yes. Does it use the word church? Correct, Your Honor. However, what's kind of weird in this case is that the jury was specifically given instructions, one of which says, goes through all of the statute, the state has to prove this, the state has to prove that. The fourth instruction was that the methamphetamine manufacturing occurred within 1,000 feet of a church, of a church. And the defendant in this case is not arguing that the jury was wrongly instructed in this case. They're arguing that the state didn't meet its burden. However, the jury was instructed that it was a church. And that can be found on the record on pages C, 193, 175, and R, 1129-30. So you don't think that in light of that instruction, the church, you don't think that anybody had to testify as to whether it was a functioning church? You don't think that the criteria in the majority opinion in ficus had it been that? So this case actually provides this court with the opportunity to readdress what it talked about in ficus. As Your Honor's dissent said, Your Honor believed that Officer Bowling testified that the home was 111 feet away from St. James Lutheran Church, and on several occasions he referred to St. James Lutheran Church as the church. So therefore, as Your Honor concluded, his testimony was generally established that he had personal knowledge of the area. However, Justice Moore's majority opinion said that although Bowling's testimony might support the inference that he was familiar with the area at the time of the trial, there is nothing about the testimony that would support the inference that he was familiar with the area on the date of the offense. But in this case, we had two officers who had a combined over 50 years of law enforcement experience testify on behalf of the state. Specifically, Officer Everett Nation has just alone 18 years of experience with the City of Taylorville Police Department. City of Taylorville is where the defendant's home, or her med lab, sits. So he has been a police officer for 18 years in the City of Taylorville. The jury could easily infer from just based on that, and his reference to not just one church, but four churches within the requisite proximity under the statute, that that's a reasonable reference that this police officer knows what he's talking about. I'm just not sure what testimony there is in the record that allows us to make that inference, because he says he knows four churches in the area? No. So Detective Nation explicitly testified that, and Investigator Brown both testified, that they did measurements. The first one was from Google, I believe. They measured it online. And then the other one actually used a measuring wheel to substantiate what he said. Right, he went from the corner to the church. Yes. But what is there about his testimony that allows us to reasonably conclude, as Justice Welch indicated in his dissent, that they were familiar with the neighborhood? Was it because of the church? He did reference the word church many times. He specifically said, I believe, they were the Evangelical Free Church, there was a Catholic church, and there was another church that he specifically named when he was testifying. Not only did he refer to that, as Justice Welch dissented, that that would be enough for him to conclude that the jury could infer, he also testified, hello, I'm a police officer for the city of Taylorville, Illinois, and I have been for 18 years. It's reasonable to assume that some of these jurors who were on this jury panel lived in the city of Taylorville and know from experience that, okay, well, he's a police officer here, I live here, I know what church he's talking about. That's a reasonable inference to make. Well, that church in that case was right outside the window of the courthouse. So it's reasonable for us to assume that no one thought to ask the important evidentiary question because the church was right there that they could see. However, isn't it necessary to actually put on the evidence that establishes the fact that needs to be proved? Well, Your Honor, the state believes in this case that they did that simply by having the police officers testify that not only was there one church, but there were four within the requisite proximity. There was no evidence that I could see from the record that there was any temporal relationship proved as to the fact that there were worshiping going on on the day of the crime, and that is just a few additional questions would have established that. There may have been those questions you referred to about the police officers and their knowledge of the city and how long they served might have been helpful and sufficient to establish their foundation as to their ability to answer questions, but they were never asked those questions. No, but what the Supreme Court in Newton did say was that the legislature has made clear that reasonable inferences can be drawn by the jury to support what they are asked to determine based on the instructions. And the fact that this jury heard this police officer say, I've worked here as a police officer for 18 years, that should be enough for the jury to reasonably infer that this police officer knows what he's talking about and, yes, these churches do exist. And what, Your Honor, hung your hat on in the Fickus decision was that you did say that the officer's testimony did support the inference, that he was familiar with the area at the time of trial, but it did not support the inference that he knew and he was talking about on the date of the offense, whereas in this case, Detective Everett Neeson specifically testified that he was at a stakeout. He was sitting outside of this house waiting, watching, knowing that this manufacturing was going on. He sat there the day of the offense, not the time of trial, but the day of the offense, and then testified to that at trial, supporting what he knew to have occurred the day of the offense. Counsel, do you know of any cases that have, I know there's some within a thousand feet of a park. Are there any cases a thousand feet from a cemetery? Do you know of any charges? I have not come across any to do with a cemetery in my research, Your Honor. But Newton did discuss several cases, including this Court's decision in Fickus, as well as several other appellate court cases that dealt with requisite proximity to a school. In Newton, they talk about the temporal relationship? Maybe I'm not remembering that correctly, but didn't the officers go further than just saying a church? They did. However, although this case might not have exactly as much information as the Court determined that there was in Newton. Newton was leaps and bounds ahead of this one. It wasn't very much, as I recall. Well, is Taylorville, I'm assuming it's a small town compared to the city? I've never been. Compared to say, so if this policeman had experience. It is. Did it say that? Did somebody testify to the size of the city? I've never been to Taylorville, Your Honor. However, I would say it would be reasonable to assume that it's not. It's probably smaller than Chicago? Right. It's probably smaller than Chicago. Well, but there was no testimony, I guess is the point. There was no testimony about the size, there was no testimony about, other than what you said, the officers were there that day. They didn't say that they worked the neighborhood, that they patrolled that neighborhood, familiar with it? He did testify about how he patrolled and how to stake out the day of the offense when he arrested this defendant. But one more question, we wouldn't even be here. Perhaps, but what Newton did is expand what the jury can infer from the facts that are testified to. The court in Newton specifically said that the legislature has already determined the trier of fact may make reasonable inferences that flow from the facts presented and apply his or her own common knowledge regarding a church to find that it is what it purports to be. Assuming that Your Honor's assumption is correct that this town is a small town, it's reasonable to assume that some of these jurors in this Christian county are from Taylorville and therefore are sufficiently familiar with that area to corroborate what Detective and Officer Nation testified to. And it's for these reasons that we respectfully request this court to affirm. Thank you. Before you leave, Ms. Osment, I have one other question. Do you think the fact that the legislature used the word church in the other statute that Ms., what is your name? Harris. Harris. Harris? We see each other so much. I know. I mean, I didn't know you were from Clay County, though. I mean, I thought you were coming from St. Louis. Well, I am. Anyway, so Mr. Harris was arguing the fact that the word church is not in this statute but is in the other statute. Do you think that's a mistake on the legislature's part, or do you think that there was a different intent? I am not sure why they chose to not include the word church. Maybe they were trying to be more encompassing and not saying church and having to list out synagogue and all of these buildings that are specifically places of worship. They just did the, I believe, the catch-all place of religious worship or parsonage to cut out having to discern what's a church and what isn't a church so that it might be easier to just have this general catch-all. Well, let me ask you this about the issue of the parsonage. If it were within 1,000 feet of a parsonage, would this same testimony have been enough? If the parsonage were being just rented out to some other person in the community and not being used by the minister of the church? Perhaps not, Your Honor, and that's exactly what the Supreme Court in Newton addressed. They said, you know, in those situations, it's very fact-intensive, and in situations where a building doesn't have the similarities of a traditional church, the state might have to produce additional, said may, did not say shall. The Supreme Court said may have to put on additional evidence to support that this place was what it purports to be. However, in this case, we're dealing with not just one church within the requisite proximity, but there were four, and the police officers repeatedly testified and used the word church and has over 50 years of law enforcement experience, and that is why the jury could reasonably infer based on that that it was what it purports to be. That would not have been hard to prove with a few more questions, would it? It might not have, Your Honor. However, it's the state's position that they did enough in this case, and even if this court were to reverse, the sentence that the defendant got imposed, 17 years, that's within the statutory requirements of the lesser conviction anyway. So if it gets reversed at all for re-sentencing, she could still face the same sentence, if not longer. Interesting. Okay. We thank you, Your Honor. Thank you. We thank you, Ms. Hoffman. Mr. Harris. Your Honor, I don't want to get too bogged down in it because I think it's clear that it's wrong. But what opposing counsel just said about not needing to remand, if you knock this down from an aggravated conviction to a simple conviction, there's no question this has to be remanded for re-sentencing, and there's no question she can't get a higher sentence than what she's had before. Are you familiar with the dates of passages of the laws? When was the statute on where it said church as opposed to place of worship? Was that passed after this statute? Do you know the dates? Your Honor, I think it's exactly the opposite. Now, don't hold me to that. Don't hold me to contempt if I'm wrong. But my understanding is the Controlled Substances Act is a much older act than the Methamphetamine Act. So in other words, they said place of worship more recently. Or after they said church. Correct. That's my understanding of it. Okay. And you're familiar with these park cases? You know, with so many feet of a park, you can't have, what? Sex offenders and stuff. Yeah, right. Do you have to prove there's people enjoying the park? Or if the park's vacant, do you got a problem? Or how do you work that? Well, I think a similar situation to Newton would be if the statute read, and I don't know. It's been a while since I've read these statutes. But let's say the statute said a swimming pool, a park, or other place of recreation. You need to be 1,000 feet from a park. Well, I don't think there would be a doubt as to a swimming pool. No, I'm not worried about a swimming pool. I'm worried about a park. I guess I have to say I saw some people walking in the park. That has to be the testimony to make it a valid conviction. Your Honor, I wouldn't say that. Although I think even under Newton, you would still have to prove that it was a park that was functioning as a park on the date of the offense. The Supreme Court in Newton said, if I can just quote, the state still has to prove that the building in question was a church on the date of the offense. That's in paragraph 22. So you say functioning a park. So in case the government was out of business on that date and had a rope in front of their clothes, it wouldn't be a park. I don't know what would happen, Your Honor. We've had a lot of it. I mean, maybe that would affect it. I don't know. Opposing counsel mentioned how many years these guys were police officers. I don't think it's a tally where you just meet so many years and I've been in Taylorville and that's it. It's been a while since I've been in Taylorville, but I also don't think there should be a different standard for what the state has to prove in Taylorville than there is in Chicago or Joliet or Peoria. In Chicago, you couldn't just say, well, I patrol the south side or whatever. And I think in Taylorville, sure, you work in Taylorville, but if you haven't been going to church or if you haven't been prosecuting a bunch of these thousand feet of church cases, you may not know the politics of whether this is a place of worship on the date of the offense. So I don't think we can assume just because they were in that city or I think one gentleman was just in the county, which I do find it amusing. It's Christian County and we're arguing about churches. Well, do you agree that this can be proven with a simple stipulation? Your Honor, I think it could. I think if counsel had done that. And that's why I don't mean to take away from your reasoning in Ficus, but I think just as well. I mean, it did cause me to scratch my head as well. The defense in that case, at least in the in the post-trial motion, conceded that this was, you know, that it meant whatever it was supposed to. I think if that had happened in this case, we wouldn't be here. Certainly, I think it can be stipulated, too, as any other fact. I also take exception to the idea that, well, we can just sort of say the church and just count on everybody in the jury box to know. Oh, you know that church. You know what goes on at that church. State has to put on proof. We don't say that the jury can add up the tally of whatever the state doesn't put on the deficit. Can you make a presumption that because the officer knew that this particular area on that day had four churches and used the word church and used the name of the church, that that's more than just saying within a thousand feet of a place of worship? Your Honor. Can a reasonable inference be made from that? I don't think so. And I would also note that he didn't say that these there were four churches on the day of the offense. First of all, one guy said there were four churches, could only name three of them. One guy said he mentioned two churches. The jury was only asked to pass on whether there was a church. And again, I think that language should probably be changed in the jury instructions after noon. If we're if we're making a distinction between church and place of worship. Well, Your Honor, I just conclude by saying we vacate the aggravation portion of this conviction and remand for resentment. Thank you, Mr. Maris. Thank you both for your arguments. We'll take them out of under advisement and we'll issue an order in due course.